IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CURTIS L. DAILEY,                              :

    Plaintiff,                              :

vs.                                            :      CA 15-0166-C

CAROLYN W. COLVIN,                             :
Acting Commissioner of Social Security,
                                               :
    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 21 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 22 (endorsed order of reference).) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the March 30, 2016 hearing before the Court, it is determined that the Commissioner's decision denying benefits should be affirmed.[1]

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 21 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for
(Continued)

Plaintiff alleges disability due to degenerative disc disease, hypertension, chronic bronchitis, gastroesophageal reflux disease, substance abuse, and Hepatitis C. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1.   The claimant meets the insured status requirements of the Social Security Act through September 30, 2017.
>
> 2.   The claimant has not engaged in substantial gainful activity since March 19, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3.   The claimant has the following severe impairments: degenerative disc disease, hypertension, chronic bronchitis, gastroesophageal reflux disease (GERD), substance abuse, and hepatitis C (20 CFR § 404.1520(c)).
>
> .   .   .
>
> 4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> .   .   .
>
> 5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant would need to alternate among sitting, standing, and walking every thirty minutes to one hour but would not need to leave the workstation. The claimant can occasionally use foot controls, climb stairs and ramps, stoop, kneel, crouch, or crawl. The claimant can never climb ladders, scaffolds, or ropes, work at unprotected heights, or work around dangerous equipment. The claimant can occasionally work at temperature extremes; in humidity or wetness; or with dust, chemicals, and fumes. The claimant can occasionally communicate orally.
>
> In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. I have also considered

---

this judicial circuit in the same manner as an appeal from any other judgment of this district court.""))

opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

. . .

In terms of the claimant's combination of physical impairments, his alleged limitations are not supported by the evidence. Although the claimant has a significant history of alcohol abuse, the claimant denied abusing alcohol or having any problems with drugs or alcohol. He testified that he uses alcohol only occasionally. Still, this impairment, in combination with his GERD, and hepatitis would exacerbate his physical complaints. He did have an instance of treatment for gastritis, hepatitis, and thrombocytopenia in the current year. However, the brevity of this treatment and the absence of any significant recurrence clarifies that the symptoms that cause him to seek treatment are not ongoing. Still, this combination of impairments has been the source of some, limited treatment.

However, the most recent treatment notes indicate no evidence of these complaints. He only refilled his medications and confirmed that he was limiting his alcohol intake. Despite a diagnosis of COPD, he had no evidence of wheezing, and his lungs were clear. Even prior to this most recent examination, the treatment notes confirm that his lungs were clear to auscultation bilaterally during all the treatment over nearly the entire previous two years. There was only a single notation in May 2012 that he even had occasional rhonchi evident on the examination of his lungs. An x-ray showed no evidence of acute chest pathology even when he went to the emergency room with complaints of chest pain in March of 2012 or March 2013. Even a July 2011 x-ray of the chest was normal and had been compared to an x-ray from 2008 that were all normal. Furthermore, the treatment notes confirm that his blood pressure was stable when on his current medications, and the claimant's instances of significantly elevated blood pressure were repeatedly occurring when he noted that he had run out of his medications only. Although the claimant has complained of chest pain, he was prescribed pain medications when these reports were made at the emergency room. Nitroglycerine did not relieve his pain when taken. Ultimately, the only indication of these complaints during treatment was his follow-up for hypertension. Even when the claimant complained of epigastric pain as well as substernal chest pain at the emergency room in March 2013, his complaints were described as both non-cardiac and his hypertension was "at goal." The claimant had no shortness of breath. [H]e even denied having a history of "PUD or GERD". Therefore, the restriction to light work only as well as the restrictions involving workplace hazards would accommodate the primary ongoing symptom of fatigue. Moreover, the residual effects of his treatment, ongoing substance abuse, and even his complaints regarding medication side effects would be accommodated by these limitations.

3

The claimant also testified that he has back and lower extremity pain. The claimant alleged that he has difficulty getting out of bed due to back pain, but he also acknowledged that he takes his children to school. He stated that there is "no problem" with his ability to perform his own personal care. He stated that he can even prepare simple meals, iron, and wash clothes. He even confirmed that he can drive or use public transportation alone. He stated that he shops for food and clothing once a month for two to three hours at a time. The claimant reported that he can lift thirty to fifty pounds. He stated that he can stand for four to five hours. He stated that he can walk for a short period of time only, and he stated that he could only sit for two hours "with pain." However, he stated that he can follow instructions well and finish things that he starts. The claimant even confirmed that he can get along with authority figures well. The claimant testified that he lives in an apartment with his two children. However, he does use a cane due to his left knee.

The claimant did have evidence of mild disc bulge at L4-5 and a moderate disc bulge at L5-S1 on an x-ray from December 2006; however, there was no stenosis or evidence of change from a December 2001 x-ray. Furthermore, even now, the claimant testified that his doctors have never advised surgery.

A 2009 x-ray of the lumbar spine was described as negative. Nonetheless, the treatment notes indicate that the claimant was prescribed Ibuprofen and Soma for lower back pain at least since February 2008. However, those medications were discontinued in lieu of Lortab 7.5 in April 2008. However, that medication has remained unchanged. He was prescribed 60 capsules instead of the 45 per month initially provided. Likewise, in November 2008, the claimant was provided intramuscular injections of Toradol and Kenalog. These injections were repeated in October 2010, October 2012, and as recently as May 2013. He was also prescribed Soma, a muscle relaxer at the 2008 examination. Nonetheless, the claimant's testimony that he takes two Lortab per day is consistent with the treatment notes because he was prescribed 60 pills and advised to return after a two-month period as of July 2010. However, there was only one refill. Moreover, the treatment notes show an extensive gap in treatment between January 2009 and July 2010 when the treatment restarted.

Then, the claimant reported foot pain in November 2010. Then, the treatment notes indicate that there was a cervical and lumbar strain due to a motor vehicle accident later in November and December 2010. However, after that point, it was again called only "LBP" (lower back pain). Although advised to return in two months, he returned only twice[,] in March and June 2011. He was even provided Celebrex once in March 2012. However, the treatment notes show that he was consistently returning almost as infrequently as every three months since that point; therefore, he was taking less medications or taking them less frequently. Nonetheless, he reported that the injections did help, and there was no indication of any increase in his medications that might suggested

4

untreated pain. His doctor even consistently confirmed that he was taking the Lortab and Soma only on an as needed basis. There was no evidence during these treatment notes of edema, ulcerations, or any other clinical signs consistent with his reports of lower extremity complaints. He was still described as being in no acute distress "NAD" generally and unchanged "un[delta]" with regard to the musculoskeletal/back symptoms even in May 2013.

Therefore, the claimant's restrictions in standing, walking, sitting, lifting, and carrying are accommodated by the residual functional capacity limitations. He also testified that he needs to move about some while he is working, but this would be accommodated by the alternation among sitting, standing, and walking.

.   .   .

As for the opinion evidence, some weight is given to the opinion evidence in Exhibit 7F. Although a non-examining physician, this physician has considered the available evidence prior to the date of his letter. His affirmation of the earlier state agency determination cannot be given controlling weight; however, his opinion is consistent with the evidence. As a result, it is given some weight.

Dr. Gayle's form is not consistent with the objective findings included in any of his treatment notes. The MRI in December 2006 and the conservative treatment recommended consistently fail to support the level of distraction indicated in Exhibit 6F. Despite the accommodations included in the residual functional capacity consistent with this form, the sitting/standing/walking limitations and the postural limitations, the remainder of his opinion are not consistent with even the recommendation for treatment. The opinions indicating requirements for time off work are speculative, at best. He provides no support for these limitations and they are inconsistent with the conservative treatment.

In sum, the above residual functional capacity assessment is supported by the absence of any diagnostic testing consistent with the degree of the claimant's allegations, the clinical signs inconsistent with the claimant's complaints during treatment, the effectiveness of the claimant's medications indicated by the treatment notes, the activities of daily living inconsistent with the claimant's allegations, the inconsistency in the dosage of the claimant's medications, the conservative treatment advised/obtained, [and] the medical opinion in Exhibit 7F.

**6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

.   .   .

5

7.     The claimant was born on September 14, 1963 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

.    .    .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.18. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational based, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as plastic molding machine operator, DOT Code 556.685-022; courier, DOT Code 230.667-010; and parking attendant, DOT Code 915.473-010. He testified that there are approximately 890 jobs as a plastic molding machine operator; 1,200 jobs as a courier[;] and 856 jobs as a parking attendant in the state of Alabama. He testified that there are approximately 166,000 jobs as a plastic molding machine operator; 124,300 jobs as a courier[;] and 65,000 jobs as a parking attendant in the national economy.

Although the vocational expert's testimony is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the discrepancy. The vocational expert clarified that the Dictionary of Occupational Titles does not explicitly address the sit/stand restrictions that are included in the residual functional capacity. He testified that experience in job placement and labor market analyses were the basis of his supplementation of the information in the Dictionary of Occupational Titles.

> Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.
>
> **11.   The claimant has not been under a disability, as defined in the Social Security Act, from March 19, 2012, through the date of this decision (20 CFR 404.1520(g)).**

(Tr. 22, 23, 24, 25-27, 27, 28, 28-29 & 29 (internal citations & footnote omitted; emphasis in original).)  The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence

---

[2]   "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot do his past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those light jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a

---

[3] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

8

court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Dailey asserts four reasons why the Commissioner's decision to deny him benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ erred in failing to assign controlling weight to the opinions of the treating physician, Dr. Benjamin Gayle; (2) the ALJ erred in failing to seek clarification from Dr. Gayle after finding that the treating physician's opinion was inadequate to assign controlling weight; (3) the ALJ erred in fulfilling her duty to develop the record by ordering a consultative orthopedic examination; and (4) the ALJ erred in substituting the opinion of a non-examining, reviewing State-agency physician for the opinion of plaintiff's treating physician in violation of *Coleman v.. Barnhart* and SSR 96-6p. The Court will address each issue in turn.

**A.** **Opinions of Plaintiff's Treating Physician, Dr. Benjamin Gayle**.  On September 7, 2012, Dr. Gayle completed a symptoms assessment form[4] and thereon indicated that he had treated plaintiff for 4 years for lumbar degenerative disc disease, hypertension, and esophageal reflux. (Tr. 368.) Gayle identified the symptoms plaintiff experiences as chronic lower back pain and spasms (*id.*), thus clearly limiting the focus of the remainder of the form to Dailey's lumbar degenerative disc disease (*see id.*). Gayle indicated that physical activity—such as walking, standing, bending, lifting, etc.— would greatly increase plaintiff's symptoms so as to cause distraction from or total

---

[4] Plaintiff's attorneys, Gardberg & Clausen, P.C., supplied this form to Gayle. (*See* Tr. 368.)

abandonment of task. (*Id.*) Gayle also opined on this form that plaintiff could not engage in any form of gainful employment on a repetitive, competitive and productive basis over an eight-hour workday, forty hours a week, without missing more than 2 days of work per month and offered, in support of this opinion, the following: "As mentioned above, prolonged sitting, standing and any repetitive bending or stooping will aggravate his condition and lead to acute flares, requiring time off." (*Id.*)

The law in this Circuit is clear that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'" *Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished), quoting *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (other citations omitted). In other words, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips, supra,* 357 F.3d at 1240 (other citation omitted); *see Nyberg, supra,* 179 Fed.Appx. at 591 (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Social Sec.*, 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam).

In this case, the ALJ accorded little, if any weight, to the opinions set forth on the form Dr. Gayle completed. (Tr. 27.)

> Dr. Gayle's form is not consistent with the objective findings included in any of his treatment notes. The MRI in December 2006 and the conservative treatment recommended consistently fail to support the level of distraction indicated in Exhibit 6F. Despite the accommodations included in the residual functional capacity consistent with this form, the sitting/standing/walking limitations and the postural limitations, the remainder of his opinion are not consistent with even the recommendation for treatment. The opinions indicating requirements for time off work are speculative, at best. He provides no support for these limitations and they are inconsistent with the conservative treatment.

(*Id.*) Initially, the Court notes that the ALJ was not required to accord controlling weight to the opinion by Gayle related to Dailey's ability to work fulltime in a competitive environment (*see* Tr. 368 (Gayle generally opined that plaintiff could not engage in any form of gainful employment on a repetitive, competitive and productive basis over an eight-hour workday, forty hours a week, without missing more than 2 days of work per month)), since that is a dispositive issue reserved to the Commissioner, *compare Kelly v. Commissioner of Social Security*, 401 Fed.Appx. 403, 407 (11th Cir. Oct. 21, 2010) ("A doctor's opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is 'disabled' or 'unable to work,' is not considered a medical opinion and is not given any special significance, even if offered by a treating source[.]") *with Lanier v. Commissioner of Social Security*, 252 Fed.Appx. 311, 314 (11th Cir. Oct. 26, 2007) ("The ALJ correctly noted that the opinion that Lanier was unable to work was reserved to the Commissioner."). Moreover, Gayle's explanation for this very general proposition, namely that "prolonged sitting, standing and any repetitive bending or stooping will aggravate his condition and lead to acute flares, requiring time off[]" (Tr. 368), simply provides no information that runs contrary to the residual functional capacity assessment "landed on" by the ALJ (*compare id. with* Tr. 24 (finding an RFC for light work except that plaintiff would have to alternate between sitting, standing, and walking every 30 minutes to 1 hour and can only occasionally

stoop, kneel, crouch and crawl, etc.)), as specifically recognized by the ALJ (*see* Tr. 27 (ALJ noted that the accommodations included in her RFC assessment, that is, the sitting/standing/walking limitations and postural limitations, were consistent with Gayle's form)).[5] Accordingly, what the undersigned is "left" with is whether the ALJ erred in failing to accord controlling weight to Dr. Gayle's opinion that physical activity—such as walking, standing, lifting, bending, repetitive movement of the extremities, etc.—would greatly increase Dailey's symptoms (that is, low back pain and spasms) to such a degree as to cause distraction from, or total abandonment of, task (Tr. 368). The ALJ, of course, declined to afford this opinion controlling (or even significant or substantial) weight on the basis that it was inconsistent "with the objective findings included in any of his treatment notes. The MRI in December 2006 and the conservative treatment recommended consistently fail to support the level of distraction indicated in Exhibit 6F." (Tr. 27.)

A review of the transcript reflects that Dr. Gayle began treating plaintiff in February of 2008 (*see* Tr. 363-364) and continued to treat him on a continuous basis through at least July of 2013 (*see* Tr. 417). On each and every occasion Gayle treated plaintiff notation was made that Dailey was in no acute distress (Tr. 319, 321, 323, 325, 327, 329, 331, 333, 335, 337, 339, 341, 343, 345, 347, 348, 351, 353, 355, 357, 359, 361, 363, 405, 407, 409, 411 & 417) and the primary objective clinical finding contained in Gayle's records after the alleged onset date of March 19, 2012 (but also before, as well) is lumbar muscle spasms (*see* Tr. 319, 409 & 411). However, just as often, Gayle noted no muscle

---

[5] In other words, because the ALJ specifically determined that plaintiff can only perform those jobs that allow alternation between sitting, standing, and walking (and only occasional stooping, etc.), Dailey will not be required to perform any of the activities—that is, prolonged sitting, walking, standing or repetitive bending and stooping—that Gayle opined would cause "acute flares" requiring time off.

spasms and no other positive clinical findings. (*See* Tr. 405 (examination of musculoskeletal/back within normal limits with no notation of spasms); Tr. 407 (same); Tr. 417 ("Extremities: FROM, no deformities, no edema, no erythema, 2+dorsalis pedis pulse bilaterally and no femoral bruits appreciated. Neuro: Physiological, no localizing findings, antalgic gait."); *cf.* Tr. 321 (examination by Gayle on March 7, 2012, less than two weeks prior to the onset of disability, reflects musculoskeletal/back was within normal limits with no notation of spasms).) Finally, MRI of Dailey's lumbar spine (with contrast) on December 1, 2006 revealed only mild disc bulging at L4-L5 and moderate disc bulging at L5-S1, with no disc herniation or spinal stenosis (Tr. 245), while lumbar x-rays in 2009 were negative (Tr. 250), and Dr. Gayle never made any suggestion that surgery was necessary, as opposed to pain medication and occasional injections (*compare* Tr. 319, 321, 323, 325, 327, 329, 331, 333, 335, 337, 339, 341, 343, 345, 347, 348, 351, 353, 355, 357, 359, 361, 363, 405, 407, 409, 411 & 417 *with* Tr. 45-46 (plaintiff's testimony that no recommendation for surgery has been made)).

In light of the foregoing, this Court cannot find that the ALJ erred in determining that Dr. Gayle's objective findings in his treatment notes did not support the level of distraction indicated on the form he completed on September 7, 2012. *See Gilabert, supra*, 396 Fed.Appx. at 655 (good cause exists for not affording a treating physician's opinion substantial or considerable weight where the treating physician's opinion is inconsistent with his own medical records). Moreover, in light of the plaintiff's description of his abilities to sit, stand, walk, lift, bend, and stoop, etc. (*compare* Tr. 217 (plaintiff stated he could lift 30 to 50 pounds, squat 5 to 10 minutes, bend for 10 minutes, stand 4 to 5 hours, reach 6 hours, walk for short periods of time, sit 2 hours with pain, kneel 10 to 20 minutes, and stair climb every other hour) *with* Tr. 44-47 (plaintiff's testimony that he cannot sit, stand, or walk for prolonged periods of time and has to shift positions)), and

Dr. Gayle's "explanation" regarding the issues plaintiff would experience with working, it is apparent to this Court that Dr. Gayle meant only to opine that "***prolonged*** sitting, standing and any *repetitive* bending or stooping" (Tr. 368 (emphasis supplied)) would cause plaintiff's symptoms to increase to the point he would become distracted from the tasks at hand (*see id.*). And since the ALJ found that plaintiff could only perform those light jobs that would allow him to alternate among sitting, standing, and walking and only require occasional stooping, etc. (Tr. 24), the undersigned perceives no "real" inconsistency between the ALJ's decision and Dr. Gayle's opinion and, as well, no basis for a remand for further consideration of the contents of the form Gayle completed on September 7, 2012.

      B.    **Whether the ALJ Erred to Reversal in Failing to Seek Clarification from Gayle**.  Plaintiff contends that the ALJ erred in failing to seek clarification from Dr. Gayle after finding that the treating physician's opinion was not deserving of controlling weight particularly given the fact that Dr. Gayle's opinion is the only opinion of record from a treating or examining physician. (*See* Doc. 12, at 5-6.) In support of this argument, plaintiff cites a Fifth Circuit case (*id.* at 5) for the following proposition: "[I]f the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ *must* seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e)." *Newton v. Apfel,* 209 F.3d 448, 453 (5th Cir. 2000) (emphasis supplied).

      The undersigned cannot agree with plaintiff that the ALJ erred in failing to seek clarification from Dr. Gayle. First, *Newton* is not binding precedent and nothing in the Social Security regulations specifically require an ALJ to seek clarification from a

14

treating physician. Indeed, § 404.1512(e) makes no reference to seeking clarification or additional evidence from the treating physician but, instead, directs itself solely to consultative examinations, 20 C.F.R. § 1512(e) (2015) ("We may ask you to attend one or more consultative examinations at our expense. . . . Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources."), and § 404.1520b simply imbues an ALJ with the discretion to re-contact a treating source, 20 C.F.R. § 404.1520b(c)(1) ("We *may* recontact your treating physician, psychologist, or other medical source. We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence." (emphasis supplied)). Moreover, the ALJ did not find Dr. Gayle's medical records inconclusive or inadequate to receive controlling weight, *Newton, supra*; rather, the ALJ found Gayle's primary opinion on the form he completed on September 7, 2012 to be inconsistent with his own records, a conclusion which is absolutely permissible in the Eleventh Circuit, as set forth at some length *supra.* Accordingly, the Court finds that the ALJ committed no error in failing to seek clarification from Gayle.

  C. **Whether the ALJ Should Have Ordered a Consultative Orthopedic Examination.**  Plaintiff contends that the ALJ failed to fulfill her duty to develop the record by ordering a consultative orthopedic examination, given his lumbar degenerative disc disease and complaints of low back pain coupled with an aged MRI and noted dearth of diagnostic evidence. (Doc. 12, at 6-7.) Plaintiff is certainly correct that the regulations provide for a consultative examination when additional evidence is needed that is not contained in the records of his medical sources or when there is an indication of a change in his condition that is likely to affect his ability to work, but the current severity of his impairment is not established. *See* 20 C.F.R. § 1519a(b)(1) & (4)

(2015). However, the regulations also provide that if information sufficient to make an informed disability decision can be obtained from the claimant's treating physicians and other medical sources, a consultative examination will not be necessary, *compare* 20 C.F.R. § 404.1512(e) ("Generally, we will not request a consultative examination until we have made every reasonable effort to obtain medical evidence from your own medical sources.") *with* 20 C.F.R. § 404.1517 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests.") and 20 C.F.R. § 404.1519a(a) ("If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination."), and the Eleventh Circuit has consistently determined that an ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citation omitted).

Here, Gayle provided a plethora of evidence regarding plaintiff's lumbar degenerative disc disease and that evidence was certainly sufficient—particularly when combined with the other evidence in the record and plaintiff's testimony—to make an informed disability decision. According, this Court cannot agree with plaintiff that the ALJ erred in failing to order a consultative orthopedic examination.

**D.     Whether the ALJ Committed Reversible Error in Substituting the Opinion of a Non-Examining, Reviewing State Agency Physician for the Opinion of Plaintiff's Treating Physician in Violation of Eleventh Circuit Case Law under *Coleman v. Barnhart* and Social Security Ruling 96-8p.** Social Security Ruling 96-8p provides that an ALJ's "RFC assessment must include a narrative discussion describing

how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)[]" and that "[i]n assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of work-related activity the individual can perform based on the evidence available in the case record." *Id.* Moreover, this Court specifically reaffirmed some thirteen years ago, in *Coleman v. Barnhart,* 264 F.Supp.2d 1007 (S.D. Ala. 2003), that the Commissioner's fifth-step burden cannot be met "by the residual functional capacity assessment of a non-examining, reviewing physician but instead must be supported by the residual functional capacity assessment of a treating or examining physician." *Id.* at 1010. Based on the foregoing, plaintiff contends in this case that the ALJ reversibly erred in this case by "relying on the opinion of a reviewing, non-examining physician to determine the Plaintiff's residual functional capacity rather than the Plaintiff's treating physician[.]" (Doc. 12, at 9; *see also id.* at 8-9.)

      There are a number of reasons that the undersigned cannot agree with plaintiff's argument in this regard. While the ALJ objectively accorded "some" weight to Dr. Hurley Knott's adoption of the RFC dated August 17, 2012 (*compare* Tr. 27 *with* Tr. 369; *see* Tr. 62-63 (physical RFC assessment dated August 10, 2012)), this is of little moment since the RFC assessment dated August 10, 2012 bears little resemblance to the ALJ's RFC assessment (*compare* Tr. 62-63 *with* Tr. 24); therefore, this Court cannot find, as plaintiff contends, that the ALJ relied to any significant degree upon Dr. Knott's RFC assessment to determine his residual functional capacity. More importantly, this Court has for years distanced itself from *Coleman, supra,* in recognizing (time and again) that in order to find the ALJ's RFC assessment supported by substantial evidence, it is not

17

necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer v. Astrue*, 2013 WL 593497, *3 (S.D.Ala. Feb. 14, 2013) ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."), *aff'd,* 542 Fed.Appx. 890 (11th Cir. Oct. 29, 2013); *McMillian v. Astrue*, 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)). And, finally, here, the ALJ's RFC assessment, *compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)), is supported by substantial evidence in the record,[6] namely, the examination records supplied by Dr. Gayle (Tr.

---

[6] It is clear to this Court that the ALJ's RFC assessment and analysis in this case is in accord with the requirements of SSR 96-8p. (*Compare* Tr. 24 (the ALJ's specific and detailed RFC assessment) *with, e.g.,* Tr. 26 ("[T]he restriction to light work only[,] as well as the (Continued)

18

319-320, 405-412 &417; *see also* Tr. 321-364), other relevant medical evidence (Tr. 244-245, 250, 286-298, 309-311, 381-382386-395 & 398-404), and plaintiff's various descriptions of his daily activities and his ability to perform work-related activities (*see* Tr. 44-47, 49-50 & 210-219).

In light of the foregoing, and because the plaintiff makes no argument that the ALJ failed to identify other work existing in significant numbers in the national economy that the claimant is capable of performing based upon the aforementioned RFC assessment, the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v. Commissioner of Social Sec.*, 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given h[er] RFC, age, education, and work experience. The Commissioner bears the burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Sec.*, 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)).

---

restriction involving workplace hazards[,] would accommodate the primary ongoing symptom of fatigue. Moreover, the residual effects of his treatment, ongoing substance abuse, and even his complaints regarding medication side effects would be accommodated by these limitations.") and Tr. 27 ("[T]he claimant's restrictions in standing, walking, sitting, lifting, and carrying are accommodated by the residual functional capacity limitations. He also testified that he needs to move about some while he is working, but this would be accommodated by the alternation among sitting, standing, and walking.").)

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 18th day of April, 2016.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**
